```
UNITED STATES DISTRICT COURT          FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

GEORGE KONSTANTINIDES,

                Petitioner,                                   MEMORANDUM
                                                              AND ORDER
                                                              10-CV-05999 (JG)
        -against-

PATRICK GRIFFIN, Superintendant, Southport
Correctional Facility,

                Respondent.
-------------------------------------------------------------x
```

A P P E A R A N C E S :

    FRANZBLAU DRATCH, P.C.
        233 Broadway
        Suite 2701
        New York, NY 10279
    By:   Stephen Neil Dratch
        *Attorney for Petitioner*

    RICHARD A. BROWN
        District Attorney for Queens County
        125-01 Queens Blvd.
        Kew Gardens, NY 11415
    By:   Karen Wigle Weiss
        *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

        George Konstantinides, who is currently incarcerated in New York's Southport Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from his conviction in Queens County Supreme Court on charges of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree.[1]

---

[1] Konstantinides was acquitted of kidnapping, and a mistrial was declared with regard to an attempted murder charge.

Konstantinides claims that (1) his trial counsel had a conflict of interest that rendered him incapable of representing Konstantinides, thereby denying Konstantinides the effective assistance of counsel; and (2) his sentence was illegally enhanced by a prior conviction that was obtained unconstitutionally and was also imposed in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

For the reasons set forth below, the petition is denied.

BACKGROUND

A. *The Crime and the Arrest*[2]

In the early hours of December 20, 2003, Konstantinides was at a bar in Queens when he learned the police were closing in. He was at that point in violation of his parole, and he knew the police were coming to arrest him and bring him back to jail. He fled in the company of another man, George Traitouros. Konstantinides jumped into the passenger side of a limousine parked at the curb.[3] Traitouros got into the limousine's driver's seat and started the engine, but he was promptly challenged by the police. When Konstantinides saw the police surround the vehicle, he pulled out a gun from a bag he had been carrying[4] and told Traitouros, "If you don't move this limousine I'm going to kill you where you're sitting." *People v. Konstantinides*, 14 N.Y.3d 1, 5 (2009). Traitouros drove away with Konstantinides in the car.

A high-speed chase ensued along city streets and, eventually, the Grand Central Parkway. During the chase, the gun discharged into the dashboard of the car. Konstantinides instructed Traitouros to continue driving, but as the 111th Street exit from the parkway

---

[2] Unless otherwise noted, the facts in this section are taken from the New York Court of Appeals' account of the crime. *See People v. Konstantinides*, 14 N.Y.3d 1 (2009).

[3] Konstantinides testified that he had no idea the police were there for him, and that Traitouros was the one who was in a hurry to clear the area in advance of the arrival of the police.

[4] Konstantinides claimed at trial that the gun belonged to Traitouros.

approached and Traitouros slowed, Konstantinides jumped out of the car and fled on foot. Carrying the gun, Konstantinides ran up an embankment, firing in the direction of the officers who were by then pursuing him on foot;[5] no injuries occurred. Although Konstantinides initially escaped, he was arrested the next day carrying the still-loaded gun that he had discharged the night before.

B.     *The Trial*

Konstantinides was tried before Justice Richard L. Buchter of Queens County Supreme Court on charges of possession of a weapon in the second and third degrees, kidnapping (Traitouros) in the first degree, and attempted murder (of the pursuing police officers) in the first and second degrees. He was represented by attorneys Geoffrey Stewart, who represented him throughout eight months of pre-trial proceedings (including a suppression hearing), and Theodore Kasapis, for whom Konstantinides had worked while on parole. Kasapis was added to the defense team shortly before trial.

Just prior to Traitouros's testimony, the prosecution notified Justice Buchter that it had been informed by Traitouros's wife that she had been approached by Kasapis, via a three-way call that included the defendant himself, and asked to influence her husband to provide perjured testimony. Traitouros's wife claimed that Kasapis and Konstantinides had called her on three occasions; two involved attempts to suborn perjury. Specifically, Kasapis pressured the wife to have Traitouros testify that the gun belonged to him rather than Konstantinides. Kasapis further told her that he intended to pay a witness named "Jennifer" to testify that she had done drugs with Traitouros, that she and Traitouros were having an affair, and that the gun involved in

---

[5]     The testimony regarding the number and direction of shots fired conflicted -- Konstantinides claimed he shot only one bullet into the air, while the officers testified that there were several shots fired in their direction.

3

the crime belonged to Traitouros. According to Traitouros's wife, Kasapis and Konstantinides also made a somewhat unique overture: Kasapis promised Traitouros's wife a diamond ring if she would leave her husband and marry Konstantinides. She refused, and told him to stop calling.

Justice Buchter expressed serious concerns about Kasapis's alleged behavior, and granted a recess to permit the defense team to discuss the ramifications of the prosecutor's revelation. However, after the recess, the record inexplicably reflects no further discussion of the issue. Thus, there is no indication that Konstantinides was informed at that time that his counsel had a conflict of interest or asked if he wanted to waive any such conflict that might have arisen. Kasapis continued as co-counsel for the remainder of the trial. The defense did not call "Jennifer" or Mrs. Traitouros. Stewart cross-examined Traitouros at the trial. Kasapis alone conducted Konstantinides's direct examination at trial and appeared at the sentencing proceeding.

Traitouros was called to the witness stand immediately after the prosecutor's revelation of Mrs. Traitouros's accusations. During cross-examination by Stewart, Traitouros denied that he owned the gun or that he had been taking drugs on the date of the offense. He did, however, admit that he knew he faced prison time if found in possession of a gun, because he was on probation at the time. The prosecution also elicited testimony from a ballistics expert, who linked a shell casing from the scene to the gun found on Konstantinides at his arrest, and from other crime scene experts whose testimony supported Konstantinides's guilt. Further, the officers who were involved with the chase testified that they had seen Konstantinides in the car

4

with Traitouros and firing a gun in their direction, and the arresting officers testified that they had arrested Konstantinides carrying a loaded gun.

Konstantinides testified in his own defense, claiming that Traitouros had fled from the police with no encouragement from him. He further testified that the gun belonged to Traitouros, and it had gone off by accident in the car. He admitted that he had taken the gun with him when he fled Traitouros's car, with the knowledge that it was loaded and operable, but claimed that he had fired only one shot, into the air, in order to facilitate his escape. He also admitted that he was still in possession of the loaded gun when the arresting officers took him into custody.

In summation, the defense argued that the gun had not belonged to Konstantinides, but to Traitouros, and that Konstantinides had taken the gun from the car in order to prevent his close friend (Traitouros) from being arrested for gun possession without realizing the drastic consequences if he, a parolee, were to be found in possession of the firearm. The defense further argued that Traitouros had lied under oath: he had not been kidnapped at gunpoint, as he testified, but rather had voluntarily fled from the police.

The jury returned verdicts of guilty on the two weapons counts and not guilty on the kidnapping count. It was unable to reach a unanimous verdict with regard to the attempted murder counts, and therefore Justice Buchter declared a mistrial on those counts, which were subsequently dismissed on the People's motion.

C. *The Sentence*

Konstantinides was sentenced on February 6, 2006. Prior to the commencement of the sentencing proceeding, the prosecution filed a prior violent felony offender statement that

5

alleged two prior convictions: a 1989 conviction for attempted second-degree murder, and a 1996 conviction for second-degree assault. At sentencing, Konstantinides admitted the fact of both prior convictions but contested the constitutionality of his 1996 conviction, alleging that his attorney had coerced him to plead guilty and had thereby deprived him of the effective assistance of counsel. He requested a hearing as to the validity of the earlier conviction. Justice Buchter denied the request for a hearing, determined that earlier guilty plea had been affirmed by the Appellate Division after a hearing on its voluntariness and that therefore its validity was "law of the case," Pet. Mem., Docket Entry 2, at 15, and sentenced Konstantinides as a persistent violent felony offender to concurrent terms of imprisonment of 25 years to life for criminal possession of a weapon in the second degree and 20 years to life for criminal possession of a weapon in the third degree.

D.   *The State Post-Conviction Proceedings*

After retaining new counsel, Konstantinides appealed his conviction, arguing that he had been deprived of the effective assistance of counsel at trial because Kasapis suffered from a conflict of interest. Specifically, he argued that the prosecutor's allegation of witness tampering and threat to call Kasapis as a witness created a potential conflict of interest and that therefore the trial judge was required to inform Konstantinides of the potential conflict and obtain a waiver in order to proceed with Kasapis as defense counsel. He further argued that the sentencing judge had erred by denying his request for a hearing on the validity of his 1996 conviction, and that the enhancement of his sentence pursuant to the persistent violent felony offender statute violated *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

6

On October 14, 2008, the Appellate Division affirmed the conviction. It determined that Konstantinides had not been denied effective assistance of counsel because he had failed to "establish that the conflict of interest in fact affected the conduct of his defense." *People v. Konstantinides*, 55 A.D.3d 752, 753 (N.Y. App. Div. 2008) ("*Konstantinides I*"). It further held that his challenge to the validity of his sentence and to the constitutionality of the 1996 conviction was "unpreserved for review and, in any event, . . . without merit." *Id.*

Konstantinides then requested leave to appeal from the Court of Appeals, which was granted on February 27, 2009 by Judge Robert Smith. *People v. Konstantinides*, 12 N.Y.3d 759 (2009). He raised several of the arguments he had raised to the Appellate Division, arguing that the allegations of misconduct against Kasapis created a conflict that either impacted the manner in which his defense was conducted, thereby requiring reversal under established state law, *see People v. Ortiz*, 76 N.Y.2d 652, 657 (1990), or was so severe as to be unwaivable, thereby also requiring reversal under Second Circuit (but not state) law. He also sought to vacate the persistent violent felony offender adjudication on the ground that his 1996 conviction was invalid. He omitted the argument that the persistent violent felony offender adjudication violated the rule of *Apprendi*.

On December 17, 2009, a divided Court of Appeals affirmed the conviction by a 4-3 vote. *People v. Konstantinides*, 14 N.Y.3d 1 (2009) ("*Konstantinides II*"). The court held that Konstantinides had not proved that the conflict of interest had "operated on the representation," *id.* at 10 (quoting *Ortiz*, 76 N.Y.2d at 657), and therefore determined that Konstantinides had not met his burden of showing that the conviction was invalid. The court declined to adopt a *per se* rule for ineffective assistance of counsel, and again affirmed the trial

judge's determination that the 1996 conviction had been properly obtained and the 2006 sentence validly enhanced. *Id.* at 13-14.

The dissenters agreed with the majority's determination regarding the proposed *per se* rule and the sentencing issues, but argued that Konstantinides should have been granted a hearing on the question of whether the conflict had operated on the defense. *Id.* at 15-16 (Smith, J., dissenting in part).

E.  *This Petition*

Konstantinides filed the instant claim for habeas relief on November 12, 2010. As mentioned above, he asserts that (1) the trial judge's decision to permit Kasapis to represent Konstantinides at his trial and sentencing deprived Konstantinides of the effective assistance of counsel; and (2) his sentence was illegally enhanced based on a prior conviction that was obtained unconstitutionally and imposed in violation of *Apprendi*.[6]

Oral argument was held on June 3, 2011.

DISCUSSION

A.  *The Legal Standard*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or

---

[6] Konstantinides actually raises three "grounds for relief" in his petition, the second of which argues that "the New York State Court of Appeals dissenting opinion should be adopted as the proper interpretation of petitioner's Fifth Amendment constitutional rights." Pet. at 3. That claim focuses on the failure of the state court to order an evidentiary hearing on the question of whether Kasapis's conflict operated on the representation of Konstantinides at trial. Though the heading to the argument cites the Fifth Amendment (and presumably the Due Process Clause), the argument reads more like a contention that Konstantinides's Sixth Amendment claim could not properly be denied without granting him an evidentiary hearing, and I treat it accordingly herein.

8

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[7]

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist*, 260

---

[7] This limitation on relief is referred to as "AEDPA deference." *See, e.g.*, *Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006). Further, in addition to the deference owed to state court determinations of fact under § 2254(d)(2), subsection (e) requires that a federal habeas court presume all state court factual determinations to be correct. The petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

9

F.3d at 93 (quoting *Williams*, 529 U.S. at 411). Elaborating on this standard, the Supreme Court has held that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see also id.* at 786-87 (a state prisoner seeking federal habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *See id.* at 785; *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B. *Konstantinides's Claims*

1. *Counsel's Conflict of Interest*

Konstantinides alleges that his trial counsel's interests conflicted with his own, as counsel could not inquire into a potential defense without implicating himself in criminal misconduct, and that Konstantinides therefore necessarily received ineffective assistance of counsel. Konstantinides's claim sounds in the Sixth Amendment of the United States Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Wherever trial counsel's interests

conflict with those of the defendant, or when trial counsel has obligations to multiple (or former) clients that potentially conflict, such a conflict may violate the Sixth Amendment.

Attorney conflicts of interest come in many forms. One, known as "*per se* conflicts," includes conflicts that are "so severe that they are deemed *per se* violations of the Sixth Amendment." *United States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004) (hereinafter "*Williams*"). In the Second Circuit, *per se* conflicts arise in two situations: "[1] where trial counsel is not authorized to practice law and [2] where trial counsel is implicated in the 'same or closely related criminal conduct' for which the defendant is on trial." *Id.* at 103; *see also United States v. Fulton*, 5 F.3d 605, 611 (2d Cir. 1993) ("The *per se* rule applies when an attorney is implicated in the crimes of his or her client."). *Per se* conflicts are not waivable by the defendant because "the conflict is so severe that no rational defendant would waive it," *United States v. Kliti*, 156 F.3d 150, 153 (2d Cir. 1998), nor do they require the defendant to show that the conflict has prejudiced or affected his case in any way. *Williams*, 372 F.3d at 103; *see also United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002) (extending rationale in *per se* conflict cases to find that an attorney's self-interest created an unwaivable conflict).

Another, deemed "actual conflicts," involves conflicts in which the "interests of a defendant and his attorney diverge with respect to a material factual or legal issue or to a cause of action." *Williams*, 372 F.3d at 103 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3 (1980) (Marshall, J., concurring in part and dissenting in part)). Although defendants must generally show prejudice in order to succeed on an allegation of actual conflict, if the defendant can demonstrate that the conflict "adversely affected counsel's performance, prejudice is presumed."

11

*Locascio v. United States*, 395 F.3d 51, 56 (2d Cir. 2005); *see United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994).

Still another, termed "potential conflicts," consists of situations in which "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *Williams*, 372 F.3d at 102. A defendant alleging a potential conflict "must demonstrate prejudice," thereby indicating that the conflict at some point crossed the line from potential to actual. *Id.* at 102-03; *see United States v. John Doe No. 1*, 272 F.3d 116, 125 (2d Cir. 2001).

The attorney conflict of interest in this case was an actual one, not merely a potential one.[8] In light of the statements attributed by the prosecutor to Traitouros's wife, "it must have occurred to counsel that a vigorous defense might uncover evidence or prompt testimony regarding his own crimes." *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir. 1984). I need not catalog here the numerous respects in which Kasapis may have been impaired (though the decisions whether to call Traitouros's wife and Jennifer as defense witnesses leap to mind); it suffices to say Kasapis had no business representing Konstantinides once the prosecutor brought forward the allegations against Kasapis.

Nevertheless, I conclude that the Court of Appeals' rejection of Konstantinides's claim was not an unreasonable application of clearly established Supreme Court law. There are aspects of the court's decision with which I respectfully disagree. Specifically, the court concluded that Konstantinides "was fully informed of the potential conflict." *Konstantinides II*,

---

[8] Konstantinides argues that Kasapis's conflict so interfered with his right to a fair trial that it was a *per se* violation of the Sixth Amendment, and thereby unwaivable. The allegations regarding Kasapis in this case are certainly shocking, and it is difficult to imagine any trial judge accepting a waiver from Konstantinides if Kasapis had been the sole defense attorney at the trial. However, because I conclude that the presence of unconflicted counsel for Konstantinides requires the denial of his petition, I need not address whether Kasapis's conflict was unwaivable.

14 N.Y.3d at 12. Konstantinides may have been fully informed of the *allegations* against Kasapis, but that is not the same as being informed of the problems those allegations could cause for Konstantinides's defense at trial. The latter task is far more involved and nuanced, and it was not even attempted at Konstantinides's trial -- at least not on the record. Also, unlike the state court, I take no comfort from the fact that Konstantinides was found guilty "only" of the firearms charge. *See id.* at 13. When trial counsel's performance is afflicted by an actual conflict of interest, the disability cannot in my view be so neatly compartmentalized.

However, I find one of the grounds of the state court's decision to be unassailable, especially in the deferential context of habeas review. The court held as follows:

> [D]efendant was simultaneously represented by conflict-free counsel who was singlemindedly devoted to his client's best interests. The first attorney [*i.e.*, Stewart] had represented defendant for the eight months preceding trial, during which he handled all the plea negotiations and pretrial motions. The first attorney conducted voir dire, delivered the opening statement, cross-examined all of the People's witnesses, and gave the closing argument. There is no suggestion that the first attorney's loyalty to defendant was compromised. In light of the first attorney's active participation, defendant has failed to establish that the potential conflict with the second attorney [*i.e.*, Kasapis] operated on the defense such that he is entitled to a new trial.

*Id.* at 11-12 (citations and quotation marks omitted). That holding is neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. Put simply, none of the cases -- Supreme Court or otherwise -- on which Konstantinides relies involved a defendant who was represented throughout the proceedings by unconflicted counsel.

Konstantinides contends that his petition cannot be denied without affording him an evidentiary hearing. For his part, the respondent contends that an evidentiary hearing may not properly be granted in light of the Supreme Court's recent decision in *Cullen v. Pinholster*, 131

S. Ct. 1388 (2011). I need not decide whether respondent is correct, for even assuming I retain the discretion to hold an evidentiary hearing in this context, *see Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("basic rule" that habeas court has discretion to hold evidentiary hearing "has not changed" under AEDPA), I would not exercise it here.

In the typical case in which a habeas petitioner requests a hearing, the request is accompanied by an assertion of what the petitioner claims a hearing will establish. Here, however, there is no such proffer. Thus, for example, Konstantinides has not denied the accusation that he was on the phone with Kasapis when the latter cajoled, threatened, and offered to bribe Traitouros's wife. That fact, among many others, could naturally bear on Konstantinides's entitlement to habeas relief; a client who joins his lawyer in criminal activity designed to influence witnesses against the client will not be heard (at least not by me) to complain that their joint efforts gave the lawyer a conflict of interest.

Similarly, Konstantinides's request for a hearing is explicitly based on his current counsel's "supposition" that "there must have been some kind of arrangement" between the prosecutor and *both* defense counsel that compromised Konstantinides's defense. Tr. at 10. But an evidentiary hearing in a habeas case is not warranted based on an attorney's supposition of what might possibly be revealed. The admittedly speculative theory that Konstantinides's other counsel might have had his own conflict (or might have bargained with the prosecutor at Konstantinides's expense to bury Kasapis's conflict) is not sufficient justification for an evidentiary hearing.

In short, I remain mystified by the state court practice that allows a problem as serious as the one that afflicted Konstantinides's trial to be resolved off the record. And I

express no disagreement with the view of the dissenters in the New York Court of Appeals that Konstantinides should have received a hearing in the state court "on the issue of how, if at all, the apparent conflict affected" trial counsel's representation of Konstantinides. *Konstantinides II*, 14 N.Y.3d at 18 (Smith, J., dissenting). But habeas review is a different matter altogether. It guards against only extreme malfunctions by the state courts, and AEDPA has erected an unreasonableness requirement that is "difficult to meet." *Harrington*, 131 S. Ct. at 786; *see also id.* ("[E]ven a strong case for relief does not mean the state's contrary conclusion was unreasonable."). Because Konstantinides was indisputably represented by unconflicted counsel throughout the proceedings in state court, he cannot meet that unreasonableness requirement here.

2. *Sentencing Claims*[9]

a. Apprendi *Claim*

Konstantinides argues that his sentence was illegally enhanced pursuant to New York's persistent violent felony offender statute in violation of *Apprendi*. In New York, a judge is required to enhance a violent felony offender's sentence pursuant to the persistent violent felony offender statute if the offender has, at the time of sentence, "two or more predicate violent felony convictions." N.Y. Penal Law § 70.08(1)(a); *see id.* § 70.08(2) ("When the court has found . . . that a person is a persistent violent offender the court *must* impose an indeterminate sentence of imprisonment." (emphasis added)). The enhanced sentence must be indeterminate in

---

[9] The respondent argues that Konstantinides is procedurally barred from bringing these claims. Opp. at 21. Because they are easily dealt with on the merits, I need not determine whether the claims are procedurally barred.

15

length (*i.e.,* up to a period of life in prison), and is bounded on the bottom end by a determinate and felony-specific period of years set out in Section 70.08(3).

New York's persistent violent felony offender sentence-enhancement statute does not violate *Apprendi*. *Apprendi* indeed requires that all sentence-enhancing facts be admitted by the defendant or proved to a jury -- but it specifically excludes from that requirement the "fact" of any prior convictions. *Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

Because Konstantinides was adjudicated a persistent violent felony offender, meaning that his sentence was automatically enhanced by the finding that he had twice been convicted of predicate violent felonies, the application of the *Apprendi* exception is straightforward and appropriate.

b. *The Prior Violent Felony Conviction*

Konstantinides also argues that one of the predicate violent felony offenses -- his 1996 conviction -- was obtained illegally. He alleges that he suffered ineffective assistance of counsel when he was coerced into pleading guilty in that case, in violation of his Sixth Amendment rights. He therefore asserts that the conviction was not properly a predicate offense for the purpose of the persistent violent felony offender adjudication.

The New York Court of Appeals rejected this argument, determining that Konstantinides had not raised sufficient doubt as to the legality of his prior conviction, but rather had made merely "conclusory allegations that his prior conviction was unconstitutionally obtained." *Konstantinides II*, 14 N.Y.3d at 15 (citing C.P.L. § 400.21(4)). This is a ruling on the

merits to which I am required by AEDPA to defer, unless the ruling was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, which it does not. Indeed, I agree with the Court of Appeals and would reject Konstantinides's claim on the merits even were I to decline to defer to the state court's ruling. *See Strickland*, 466 U.S. at 692-93 (petitioner must "affirmatively prove prejudice" in order to obtain relief on an ineffective assistance claim). Claim three of the petition is thus denied as well.

## CONCLUSION

For the reasons stated above, the petition is denied. As Konstantinides has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.


John Gleeson, U.S.D.J.

Dated: July 25, 2011
      Brooklyn, New York